Susan Davies TATE, Appellant
(Petitioner),

v.

**WYOMING LIVESTOCK BOARD,**
Appellee (Respondent).

No. 96–138.

Supreme Court of Wyoming.

Feb. 13, 1997.

Hardy H. Tate, Sheridan, for Appellant.

William U. Hill, Attorney General; Thomas J. Davidson, Deputy Attorney General; Thomas A. Roan, Senior Assistant Attorney General; and Lynda G. Cook, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellee Wyoming Livestock Board denied Appellant Susan Davies Tate's request to have her Wyoming livestock brand renewed, declaring that the brand had been abandoned. The board also denied Tate's application to have the brand reissued. Tate filed a petition for review with the district court, and that court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

We affirm the board's decision.

## ISSUES

Tate offers the following issues for our review:

A.  Is a Wyoming livestock brand property for purposes of Article I, Section 3 of the Wyoming State Constitution and the Fifth and Fourteenth Amendments to the United States Constitution that prohibit the taking of property without due process?

B.  Is the rigid application of the forfeiture provision of Wyoming Statute § 11–20–115 to nonresident brand owners without actual notice to them of the proposed forfeiture, a taking, in violation of Article I, Section 3 of the Wyoming State Constitution and the Fifth and Fourteenth Amendments of the United States Constitution?

## FACTS

Donn T. Davies conveyed the Spear D (→ D) brand to Tate in 1976, using a bill of sale. Davies recorded this bill of sale with the board. The bill of sale listed Tate's address as being Box 277, Ashland, Montana 59003. Tate thereafter notified the board on three occasions of changes in her address.

Tate rerecorded her brand in August of 1985. The rerecording receipt indicated that the brand had been renewed on January 13, 1986, and that it had to be rerecorded in 1995. During the 1994 legislative session, the Wyoming legislature amended § 11–20–115, changing the date by which Tate was required to rerecord her brand.[1]

On October 11, 1994, the board mailed a notice to Tate, informing her that her brand would expire on January 1, 1995, and that the renewal fee for her brand was due by that date. The board sent the notice to Tate's most recent address which was shown on the brand records. Tate had moved, and the post office did not have a forwarding order on file for her; therefore, the notice was returned to the board. The board mailed another notice to the same address, and, again, the notice was returned because the forwarding order had expired.

Sometime after the sixty-day grace period which was allowed in § 11–20–115(a) for rerecording brands had expired, Tate contacted the board, seeking to renew her brand. The board informed her that she had missed the deadline and that she had thereby abandoned her brand. Tate sent a letter to

1.  Prior to the 1994 amendment, § 11–20–115 provided:

> Every tenth year after 1935, every owner of a brand or mark shall rerecord the same, and failure to do so is an abandonment of the brand or mark. At the expiration of each rerecording period, the executive officer of the board shall notify by mail, at the address shown on the brand records, the party owning the brand or mark that the brand or mark has not been rerecorded and unless rerecorded within ninety (90) days from the date of notice the brand or mark will be declared abandoned and will be allowed to other applicants.

Wyo. Stat. § 11–20–115 (1989) (amended 1994). Section 11–20–115 now provides in pertinent part:

> (a) Every tenth year after recording a brand, every owner of a brand shall rerecord the

brand, and failure to do so is an abandonment of the brand. At least sixty (60) days preceding the expiration date of the brand, the board shall notify by mail, at the address shown on the brand records, the party owning the brand that the brand must be rerecorded and if the brand has not been rerecorded within sixty (60) days from the expiration date ... the brand will be declared abandoned and will be allowed to other applicants.

> (b) Effective January 1, 1995, every owner of a brand shall rerecord the brand. The term of the rerecording period and the renewal fee shall be established by the board but shall not exceed the fee established by W.S. 11–20–116 and the term shall not exceed the term established by this section.

Wyo. Stat. § 11–20–115 (Supp.1996).

the board on June 12, 1995, explaining that she was living in Nevada, that she did not know that the law had been changed, and that she did not receive any notice of her obligation to renew her brand by January 1, 1995. Tate sent a later letter in which she informed the board that she had been advised that she could not simply renew her brand and that she had to apply to have the brand reissued. She informed the board that it was her desire to have the brand renewed but that, in the event that the brand was not renewed, she was applying to have the brand reissued. The board refused to reissue the brand because the brand would conflict with existing brands.

Tate asked the board to reconsider its ruling that the brand had been abandoned and its refusal to grant her application for the reissuance of the brand. The board affirmed its original decision, pointing out that it was the brand owner's responsibility to update her address and that the brand conflicted with other brands. Tate again asked the board to reconsider its decision, and the board again affirmed its prior decision, electing to follow its policy not to permit renewals after the statutorily imposed deadline. Tate filed a petition for review of that administrative action with the district court, and the district court certified the case directly to this Court.

## STANDARD OF REVIEW

■ When a case has been certified to this Court pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to a reviewing court of the first instance. *Pfeil v. Amax Coal West, Inc.*, 908 P.2d 956, 959 (Wyo.1995). "The scope of review of administrative actions is defined in WYO. STAT. § 16-3-114(c) (1990)." *Id.*

## DISCUSSION

### A. Property Interest

■ In Tate's first issue, she claims that Wyoming recognizes brands as being property. The board agrees that a properly recorded brand gives its owner a constitutionally protected property interest in that brand.

The relevant statute provided:

Any brand recorded as required by law is the property of the person in whose name it is recorded, and is subject to sale, assignment, transfer, devise and descent as personal property. Instruments of writing evidencing sale, assignment or transfer shall be acknowledged and recorded in the office of the board in a book kept and indexed for that purpose. Acknowledgment and recording of such instruments have the same effect as to third parties as the acknowledgment and recording of instruments affecting real estate.

WYO. STAT. § 11-20-109 (Supp.1995) (amended 1996). Pursuant to this statute, a brand owner has a property interest in his brand as long as the brand remains properly recorded.

### B. Due Process

■ Although it is somewhat difficult to define Tate's constitutional challenge with precision, it appears that she is claiming that, because of the amended notice provision contained in § 11-20-115, she was deprived of her brand without being given due process of law and that § 11-20-115 is unconstitutional because it does not contain a provision which defines what type of notice is required. The board responds by arguing that Tate failed to satisfy her burden of proving that the statute is unconstitutional.

■ We have said the following with regard to procedural due process protections:

Procedural due process principles require reasonable notice and a meaningful opportunity to be heard before government action may substantially affect a significant property interest. Due process considerations are invoked in administrative proceedings. A party claiming infringement has the burden of demonstrating that infringement by first showing the existence of a protected property interest and then showing the interest has been affected in an impermissible way.

*Pfeil*, 908 P.2d at 961 (citations omitted). "Statutes are presumed to be constitutional. Challengers bear the burden of proving that a statute is unconstitutional." *Id.*

■ The statute at issue provides in pertinent part:

At least sixty (60) days preceding the expiration date of the brand, ***the board shall notify by mail, at the address shown on the brand records,*** the party owning the brand that the brand must be rerecorded and if the brand has not been rerecorded within sixty (60) days from the expiration date ... the brand will be declared abandoned and will be allowed to other applicants.

WYO. STAT. § 11–20–115(a) (Supp.1996) (emphasis added). The board has interpreted this provision as implicitly imposing a duty on the brand owner to inform the board of any address changes to ensure that its records are current.

We agree that an implicit requirement is present within the statute which requires a brand owner to inform the board of her whereabouts. The brand owner is in the best position to know her current address, and it is a simple matter for her to notify the board of any changes in her address. In 1995, the board rerecorded over 26,000 brands. It would be unreasonable to require the board to verify the current address for each brand owner. We are convinced that the legislature would not impose such an onerous burden on the board and that it intended for the brand owners to notify the board of address changes so that the board could satisfy its statutory duty to notify the brand owners. We are satisfied that even Tate interpreted this statute as charging her with the duty to notify the board of any changes in her address because she did inform the board of at least three address changes.

Given this interpretation of the statute, we must decide whether the statute measures up to the due process standards. The United States Supreme Court carefully considered procedural due process notice requirements in *Mullane v. Central Hanover Bank and Trust Company*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), which case we have cited with approval on many occasions. *See, e.g., Gookin v. State Farm Fire and Casualty Insurance Company*, 826 P.2d 229, 232–33 (Wyo.1992); *Colley v. Dyer*, 821 P.2d 565, 567 (Wyo.1991); *Hanesworth v. Johnke*, 783 P.2d 173, 175 (Wyo.1989). Although the specific notice provision involved in *Mullane* was notification by publication, the analysis as it pertains to missing or unknown persons is relevant:

Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding. But the vital interest of the state in bringing any issues as to its fiduciaries to a final settlement can be served only if interests or claims of individuals who are outside of the State can somehow be determined. A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified.

Against this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment....

The Court has not committed itself to any formula achieving a balance between these interests in a particular proceeding or determining when constructive notice may be utilized or what test it must meet. Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents....

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections....

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected....

. . . .

... A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, ... or

that he has left some caretaker under a duty to let him know that it is being jeopardized. As phrased long ago by Chief Justice Marshall in *The Mary,* 9 Cranch 126, 144, 3 L.Ed. 678, "It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it."

. . . .

. . . [I]t has been recognized that in the case of persons missing or unknown employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.

. . . .

. . . We recognize the practical difficulties and costs that would be attendant on frequent investigations into the status of great numbers of beneficiaries, many of whose interests in the common fund are so remote as to be ephemeral; and we have no doubt that such impracticable and extended searches are not required in the name of due process.

*Mullane,* 339 U.S. at 313–18, 70 S.Ct. at 656–59 (citations omitted).

In order to determine whether the board's effort to notify Tate was sufficient enough to satisfy the due process requirements, we must balance the state's interests against Tate's interests. *Colley,* 821 P.2d at 567 (citing *Mullane* ). Tate's property interest in her brand gave her a significant interest in receiving notice. However, this interest cannot justify the extreme burden which would be placed on the board if the board were required to locate the current address for each brand owner who moved without giving the board a change of address. In the case at bar, Tate lived in Montana, New Mexico, and Nevada after receiving the brand. We agree with the statement made by the board in its brief that, given the board's limited resources, its duty to use its resources prudently, and its duty to administer over 26,000 brands, it would be unreasonable to require the board to undertake an investigation to determine the location of a brand owner who could live virtually anywhere.

Tate argues that she was not given a meaningful opportunity to renew her brand because she was not notified that the brand would be declared abandoned if she did not renew it. The fact that she did not receive the notice which was sent to her last known address does not make the statute unconstitutional. *Mullane* does not require that Tate necessarily receive notice; rather, it requires that the notice must be reasonably calculated to reach her. The procedure which the board followed satisfied this requirement. It was Tate's failure to notify the board of her new address which made actual notice infeasible.

## CONCLUSION

The board satisfied Tate's due process rights when it sent the notice to her last known address. The board, therefore, acted properly in declaring that Tate's brand was abandoned because she had failed to renew it by the statutory deadline.

Affirmed.